This case, Denise Carey v. Cityof Wilkes Barre May it please the Court, my name is Attorney Cynthia Pollack and I represent the appellant Denise Carey. Could you bring the microphone down just a little bit please? In connection with this matter, which I represent Denise Carey, I reserve three minutes for rebuttal. We're here today because of the fact that the defendants made a fatal error in opposing a fee petition. They did not file any affidavits of showing that the market rates were $225 an hour. And because of that fatal error, since this Court has been clear in Bell, Cunningham, Evans that you must file affidavits opposing the affidavits that are filed, it's not enough to make legal arguments in a brief. Well, I don't know that our case law is all that clear. Haven't we said that if there is an objection challenging the reasonableness, you know, there's no need for an affidavit in Bell v. United Princeton? You can make it in a brief. You don't have to include an affidavit. Bell was quite, no, Your Honor, only because if you go a little further in that opinion, it states, for example, a claim that the fee appellant's billing rate was lower than claimed, he or she must introduce affidavits averring the facts upon which the challenge is based. Affidavits are required in such instances because statements made in briefs are not evidence of the facts asserted. Well, that's if the objector wants to raise a factual issue as to the billing rate as such, not generally as to the reasonableness, isn't it? No, Your Honor. I think our case law is all over the lot on this, and the district court may have done an okay job by finding something that seemed reasonable. I don't know. I mean, on the one hand, your client didn't offer what is a market rate in the community. She had an affidavit of her own rate and one other person's whose experience wasn't the same. So did she meet her burden of showing a comparable, reasonable market rate in the community that was clearly the standard? Absolutely. By submitting an affidavit attesting to the hourly rate that lawyer bills, supported by someone who does the same work, comparable work, and this court looks at the comparable legal services, which is the Lanny case. But the person had much more experience. So don't you have to find a comparator of someone in the community who has the same experience of you, and you say, okay, I get $300, this person gets $290, this person gets $320, and we've all been practicing the same amount of time? I mean, it puts a big burden on plaintiffs, but doesn't the case law require that? No. Because of the fact I have the same experience as Attorney Diller. We do the same work. In the last four years, who has tried the majority of civil rights cases in the middle district for Scranton? I would argue it's me, not Attorney Diller. But didn't the district court find that Diller's experience wasn't comparable? And the district court was wrong there, because this court in Washington specifically said that marketplace billing is a factual question, which leads back to your earlier question, and the court had no discretion to lower the requested rate unless the other side provided affidavits showing that the rate is $225. There was, I submitted in my reply brief that a male lawyer who has only been practicing six years lower than me was able to get $300. Why should I not be able to get the same rate having practiced 12 years and having more experience, more trials, more case filings? Did the district court decide this case using the right procedure? No. They made legal error based on... What do you say the right procedure is? And which case supports that? Okay. Well, I'll go to Evans. Okay. And, quote, this case presents an unusual situation unlikely to reoccur, and that the Port Authority failed altogether to challenge the requested rate. Had the Port Authority met its obligation to contest that rate in a timely manner, it might well have been able to establish that a lower rate was appropriate. In that case, they did file an... But isn't there a first step before you get to the defendant's position? Don't you need to establish, in the first instance, a prima facie case of what the correct rate is? Correct, and I did. You say you did. Absolutely. Where is it in the district court's opinion that says that I didn't establish it? It was all based on length of service, which this court... Okay. My point is, did the district court use the wrong procedure in not at least acknowledging what you had submitted in the form of your affidavit and the affidavit of the other counsel to establish at least what your position was? My thoughts on the matter is that they... The district court just reduced it, and it should have left it uncontested because there was no affidavit, so there was no... So your argument is you established your prima facie case? Absolutely. Okay. You say you showed that your rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation by offering one other comparator. This court has never stated that you have to have five, you have to have four... No, I know. I'm just... But that's Blum. That's the United States Supreme Court. So, I mean... But I'm not... I'm just not sure whether having one other person and without... As to what I said, that there is comparable skill, experience, and reputation. And that's a very interesting point. I'm glad you brought that up because of the fact that in Laney, this court says, quote, a current market rate is exactly that, a reasonable rate based on the currently prevailing rates in the community for comparable legal services. It doesn't say comparable legal services with X amount of years. Well, but the Supreme Court has said reasonably comparable skill, experience, and reputation. So, I'm just quoting the Supreme Court. And there's only a handful of us that do civil rights case in the Scranton-Wilkes-Barre area. There isn't, unfortunately, here in Philadelphia, many people who do this type of work that are very skilled as Alice Ballard, you know, Carmen Matos. But we don't have that in Scranton-Wilkes-Barre, unfortunately. Well, the standards on both sides are a little bit fuzzy as to what you have to do and also what the defendant has to do. I mean, we do have law that says, you know, if the defendant objects, then, you know, the judge has to decide. And, you know, what's the judge supposed to do, ask for more evidence from you or look at the rate you got before, the rate you're asking for now, and come up with something that in her discretion, you know, seems fair given what she's got before her. I mean, at some point, district court judges should be permitted to, you know, find the right rate based upon what's before them. Yes, what's before them. There was no affidavits. And to question an hourly rate, you must do an affidavit. You've emphasized that. But I agree with Judge Rendell that our law is not quite as clear as you're saying it may be. They did submit four cases, and one of them was a case involving you, the Loman case. Isn't the Loman case really what hurt your argument? No, because in the Loman case, there was affidavits filed, but from the defense bar. In this case, there is absolutely no affidavits. But the fee that you were awarded. By Judge Caputo, you were awarded $10 less than what Judge Rambo gave you in this case, correct? Correct. It doesn't undercut my argument because this circuit has specifically said in Lanning that historical rates are not what you judge. And actually say we conclude that the district court's use of a historical graduated scale to calculate a current market rate for partners that long in Fleming was a misapplication of the appropriate legal standard. So it's clear that the case law, I have Evans, Riddle, Lanning, Cummings, Bell, all state about the affidavit must be filed to oppose an hourly rate question. This is one of the few places that a district court doesn't have discretion, which is giving the hourly rate. Assuming there's no legal error, you face a pretty steep burden, right? It's clearly an erroneous standard. I would state, I know I put erroneous in my brief, but I think it even is plenary because of the fact that the Washington case did state that. And it's not an abuse of discretion, so I don't have a hard battle. Thankfully to the case law that supports my position, which is hourly rates is something that... You're saying we give no deference to the district court's assessment of what your hourly rate ought to be? Correct. You reassess the situation because of a number of reasons. That's the standard. And then secondly, the wrong legal standard was applied here because of the fact it has to be based on the record. And the record, the only affidavits that were in was the 300 and my colleague who charges higher than me, 375. We do the same work. We do comparable work. Let me ask you about that. That's what you supplemented. Later you told us that, right? It was a male who has about exactly the same experience as you when he got more, I guess? Yes, he got more. Here's my question. I mean, was that sent to us in the first instance? The district court never got to consider that, right? It was the district... I know it was the same judge. Okay, so... That wasn't part of the record below. No, it was not because it just was an opinion issued and I stumbled upon it. And to my shock, if I can't get the rate of 300 after 12 years of experience, how can someone with only six years, if you're looking just on experience? To me, I think if you're really good at six years out, you should get the top dog rate because you're good. When did you get the rate of 215? How long ago was that? 2008. So it was four years ago. And now we did say in the Black Grievance Committee that a fee award that you got in another case is a factual basis and can provide a factual basis. Well, I would disagree with that because that was a 1992 case. Lanny, which is 2001 by this circuit, specifically said historical rates are not how you should assess the factual issue of what the hourly rate is. But I have to go back and look at Lanny. I thought that was a more generalized rather than a specific lawyer's rate in a case. The Todd case you cite in your reply brief, who decided that? Pardon? Who decided the Todd case, Judge Caputo or Judge Rambo? The Loman's case? Todd versus? Oh, yes, Judge Caputo. Judge Caputo. Yes. So not the same judge that decided this case, but the same judge that decided the Loman case. But the problem is I can't ever get away from Loman. I understand that. Once you get an hourly rate. Did you appeal that? With the exception of here. Did you appeal that? Yes, that's a good question. Pardon? Did you appeal Loman? Absolutely. And unfortunately, I wasn't successful, Your Honor. You had the case. You know, be it as it may, I'm here because this one is clean, perfect for your presentation because of the fact that an hourly rate, the district court cannot use its discretion to lower it. If the judge had given you $275, you probably wouldn't be here. It's kind of close enough. You know, did she have to give you $300? Absolutely, because that's what the record shows. And why should a man get $375, but yet a woman can't get less than $300 when you do the same work? Well, I don't think that was the issue, was it, man versus woman? Was that raised before us? If that's raised before us and before the district court, that's a very different issue. Well, I wasn't raised. She saw a distinction between the experience levels, which is what district courts do. You look at this, you look at this, and it's not apples and apples, it's apples and oranges. I mean, as district court judge, I had to make those judgments all the time. And you're telling me that even though it's different, I have to say apples, apples? You have to say apples. Why? You can say apple, oranges, but to say apple, oranges, they have to file an affidavit, which they did not do in this case, and because of that. Because in McDonald, this court state, we also relied on the fact that statutory fee litigation is adversarial litigation, and as such, there is no need for the district court to reduce a fee on its own initiative. This wasn't its own initiative. You're talking about cases where it's a sua sponte raising by the district court, and that is absolutely correct. If this defendant had been silent and just done nothing, then Judge Rambo would not have had the authority to do something. But here, they objected, they said, wait a minute, 215. All right, we'll hear from you on rebuttal. I don't want to argue with you. Thank you. May it please the Court. Mark Buffalino on behalf of the City of Wilkes-Barre. I first want to address the standard of review for this matter because I'm at disagreement with my esteemed colleague. It is a clearly erroneous standard, as Attorney Pollack appropriately pointed out. Well, it's not a clearly erroneous standard as to whether or not the court used the right procedure. No, Your Honor, but whether or not the proper billing rate or the appropriate billing rate is a factual question. But if we conclude that the question as to whether the right law was followed is we have plenary review. I would agree, Your Honor. Okay. And to that end. Did the court follow the right procedure? We believe it did. It seems to me that she jumped right in to say that the defendant's request was too high. Jumped right to the second part as opposed to evaluating the first part. Well, she does say, the district court does say in its opinion at page 4, it talks about the positions put forward by plaintiff's counsel relative to her years of practice, her years in human resources, and the comparative evaluation with that of the affidavit of Attorney Diller who was submitted in support of that. So, and that sort of dovetails with what I was going to say next, which is essentially, and I think each of Your Honors have pointed on it already, that the initial burden is on plaintiffs, on the plaintiff and plaintiff's counsel, to present sufficient enough evidence of a reasonable market rate for what the hourly rate should be. Unless and until plaintiff carries that burden, and this court has repeatedly encountered such situations where that has not been done, and until plaintiff's counsel or plaintiff carries that burden, then the defendant and the court for that matter need not go forward. But it's very difficult to determine exactly what the district court did. She said, I have this evidence of a reasonable market rate. She seemed to be satisfied that what had been presented had to do with a market rate. Didn't find fault with the plaintiff for failing to present that. So she took it and then just pulled out of the air the 225. I don't think she pulled it out of thin air. Well, what's the basis for the 225? A couple of things. The plaintiff, the standard is that there has to be a showing of comparable skill in the community, and this court has said one of the things that the court must consider or should consider is the experience and skill as compared to lawyers with similar experience and similar practice. All right. So how different were they? Very different. Attorney Diller, which was the only other affidavit offered in support of the rate request, had 15 years more experience, had tried. Fifteen years more? More. That's 15 years. Okay. Go ahead. Had tried approximately 90 cases. I think it may have been 86 at the time the affidavit was submitted. And more than that, the Lowman matter, where in 2008, which was at the time contemporaneous with the case that is presently before the court, had already established a rate that was appropriate in the community, not just for lawyers of similar skill and experience as plaintiff's counsel, but for plaintiff's counsel. All right. How do we look at this, though, without looking at Todd? I mean, here's somebody in Todd with less experience than Ms. Pollack who comes along afterward and gets far more. Well, Your Honor. To me, Ms. Pollack raises the fact that counsel for Todd was a male colleague. She says that in her reply brief. She raises that issue. I mean, it bothers me a little bit, exactly what the standard is in the Middle District. First and foremost, I think the Court has properly noted before that that matter was never raised in the court below. So I'm not sure that is appropriate. But she raised it in her reply. I mean, it's there. It is. It's there. I don't think the issue of gender is not based in fact or upon the record. Well, let's forget gender. Let's say it was another woman in Todd who got that rate. Does that cast doubt on whether we have, you know, reasonable market rates? Or, I mean, it seems like something's going on here that maybe nobody's really looking at what lawyers really get, or maybe there's a disparity and we need to figure this out. Well, first of all, there were two sets of lawyers in Todd, one that actually was trial counsel and one that had previously served up to the point of trial and then took over on appeal. I have the benefit of knowing that because we represent the county in Todd. So you paid that bill too? Not yet. One of the firms involved in that had considerably more experience. They were a firm of, I think, a father and two sons, and the principal in that firm has considerable experience in civil rights litigation. In addition to that, you have to look at the Lewis case cited by the district court. In that case, they established a reasonable market rate, and I think it was raised somewhere during plaintiff's argument about how do we hire somebody of considerable skill. There was a lawyer in Lewis that had, I believe, 36 years of experience or since 1976 had tried and the court had found it was highly, highly skilled, not just skilled but highly skilled, and he only got $300 an hour. Here, and with no disrespect to plaintiff's counsel in any way, nine years of practice at the time of this case, nowhere near the trial experience that was proffered in the affidavit of Attorney Diller. The district court did the only thing that it could do. It weighed what was put in front of her and made the determination based upon the standards that this court has set out time and time again that before you get to the issue of what the defendant has to do in opposition to a fee petition or a reasonable rate, the burden has to be carried. And I think that's essentially, and it may not be crystal clear in the opinion, but I think that's essentially what the district court was saying. Look, you came to me, you asked me for a rate, and then you offer me a rate or an affidavit of somebody that is totally uncomparable. When the standard is, it must be comparable. What's the significance of you folks not filing an affidavit? None. This court has said in Rhode v. De La Cipre, there are other cases cited in our brief that say the defendants can oppose the request for a reasonable rate by affidavit or by brief. We didn't just make that up. We followed what this court has said time and time again. In addition to that, if you look at the United States Supreme Court's decision in black grievance, there's some guidance there as well in that, first of all, it's distinguishable from this case in the sense that in that case the level of experience was not what was being contested in that case. There was a reduction in the hourly rate, but the issue wasn't the same as what's here. Here is a comparison of what the relative level of experience was. But the court does go on to say, not only in that case but in others, that it reiterates the fact that it is plaintiff who has to get over that initial burden before the defendant has to come forward with affidavits or anything. The problem with these cases is that the rates are all set by court order. It's not like a client is charging someone and can therefore in the market get X dollars because they're necessarily civil rights cases. So it's almost like what one court says becomes the market until someone else says something else, and you're never sure exactly what record was before the judge at any point in time. It seems like a moving target that's very difficult to figure. I'm not saying I disagree with you, Your Honor, but the truth of the matter is the parameters within which we operate are cast upon us, and so we deal with what it is. So maybe at some point somebody much smarter than I will come down with a much more delineated method of calculating that. But until then, this is what we had, this is what Judge Rambo had, and that's what she did, and it was completely appropriate. Mr. Buffalino, the billing rate has some significance, doesn't it? I'm sorry, Your Honor. Doesn't one's billing rate have some significance to the ultimate decision? Even though in these cases it's fee shifting by court order, part of what Ms. Pollack or any other applicant needs to show is what their normal billing rate is for this type of work. What has to be shown is that it's reasonable in the marketplace. Exactly. So it's not that necessarily if I had to say that my normal billing rate is $800 an hour, I don't think the court should be then to say, oh, well, if that's what he normally charges and that's what he gets. The question is, is it reasonable when you consider not only what my level of experience is or my level of success or non-success in cases of these types as compared to the community with which we practice? So are you saying one's normal billing rate has no relevance? I'm not saying it has none. I'm saying it may have none when you consider the other factors in the community. It could have none. It could have some. It's impossible to say. In the case that's before you, Your Honor, it has absolutely none. The district court's opinion, going back to it, we didn't see anywhere, did we, that Judge Rambo explicitly said that your adversary failed to meet her burden of showing the rate was reasonable? No. In fact, I think I said that. I don't think there was any. She never said that. No, sir. She never said that there was any deficiency in anything that was before her. On either side. She just said a reasonable market rate, so therefore I find maybe it's that arbitrariness where we don't really know why she picked that number. Well, I'm not sure that I. As being the reasonable rate. Where did that number come from? She says, at page three of her opinion, she talks about the Lewis case, in which a lawyer from the Harrisburg community was given $300 an hour. She evaluated that matter. She looked at the Lohman case, also at page three of the opinion. The Lewis case, wasn't that a master? It was. It was. But the issue is really, you know, what is the. Highly skilled and respected, well known to this court, and been in practice years longer. Okay. Yeah. And even for that particular individual who had been practicing since 1976, he just achieved the $300 threshold, who was highly skilled. She also took a look at the Lohman case, which involved plaintiff's counsel. Right. She went on at page four to consider a plaintiff's arguments regarding her own skill level. With all due respect, what more was she to do? That's exactly. She is charged with considering the evidence of record, not making generalized determinations under this court's precedence. And she did not do that. She considered the evidence of record that was put before her. It's not up to her to. It's not up to the district court to make the record. It's up to the plaintiff. And so if there was a failing here, it lies with the plaintiff, not with the defendants. Aside from an attorney's resume, is a factor as well the judge's own perception of how skilled the lawyer was before the court? In other words, the district judge watched the entire trial and I guess assessed in her own mind how skilled each attorney was. Is that a factor? I don't know that it would be a factor in determining the hourly rate. Obviously, under the Johnson, the other 12 factors that exist. We had, as you know from reviewing the record, we had made other objections at the time at the district court to the relative success of plaintiff's claims for a further reduction of the amount that was awarded. I think in that regard, the court not only can consider it, it ought to. Any further questions, Your Honor? No, I think not. Thank you. Ms. Pollack, reserve rebuttal. Thank you. The district judge in this case did not oversee the trial. We had trial in Scranton and then the case was transferred to Judge Rambo. So she did not ever experience me in the courtroom or whatnot. But it still wouldn't matter, even if she did, because of the fact that the hourly rate always goes back to the affidavits. And specifically, Judge Randell, you wrote in Ridley, where as here the plaintiff has met his prima facie burden under the community market rate load star test and the opposing party has now produced contrary evidence, contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward. Well, here they did point to the fact that you've gotten a much lower rate in another case. So that's contradictory evidence, is it not? No, it's not, because in order to have it, you have to do an affidavit. And I think that's the cleanest way the district court can resolve these issues, unless there's going to be a community survey and says, you know, You can't take judicial notice in another court decision? Not for the hourly rate, because of the fact it's based on affidavits. And I would never be able to get above 215, 225 if we looked at what I made in 2003, what I was awarded. It's certainly with each year that passes, with each day that passes, one gets more experience. And I did do the appropriate thing, file my affidavit, which went unopposed, and my billing rate is $300. All of my clients sign a fee agreement that says that that's reasonable and they're okay with that. So certainly, in order for the court to lower it to 225, there's no affidavit that says, Oh, the market rate is 225. And that's what I think was necessary in order for the court to do what it did in this case. And the inexperience, as counsel has said, with me versus attorney-dealer, we both do the same comparable work. We both do civil rights work, which is more strenuous and whatnot. But we both do it, we should get the same pay. I have 12 years at this point, over 12, and I have a master's in law, in trial advocacy. How does that not ever come into play? I have a certificate from Jerry Spence, his trial lawyers college. I don't know what more I could get in the next 10 years that I'm practicing that would ever get me to a point where the court would recognize that $300 that you give to a man with six years less experience is what you should give to attorney Pollack. Anything further? No, I think that's fine. Thank you. Thank you very much, counsel. The case is well argued. We'll take it under discussion.